UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLARENCE VERNE ELLESBURY,

Plaintiff,

v.

J. FERNANDEZ, et al.,

Defendants.

No.  2: 18-cv-2744 KJM KJN P

FINDINGS AND RECOMMENDATIONS

I.    Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court are defendants' summary judgment motion (ECF No. 79) and plaintiff's motion for partial summary judgment.[1]  (ECF No. 82.)  For the reasons stated herein, the undersigned recommends that defendants' motion be granted and plaintiff's motion be denied.

II.   Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[1]  Although plaintiff characterizes his motion as a motion for partial summary judgment, plaintiff moves for summary judgment as to all claims.

1

1  judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

6  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

7  56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

8  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

9  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

10  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

11  committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

12  burden of production may rely on a showing that a party who does have the trial burden cannot

13  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

14  should be entered, after adequate time for discovery and upon motion, against a party who fails to

15  make a showing sufficient to establish the existence of an element essential to that party's case,

16  and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

17  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

18  necessarily renders all other facts immaterial."  Id. at 323.

19        Consequently, if the moving party meets its initial responsibility, the burden then shifts to

20  the opposing party to establish that a genuine issue as to any material fact actually exists.  See

21  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

22  establish the existence of such a factual dispute, the opposing party may not rely upon the

23  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

24  form of affidavits, and/or admissible discovery material in support of its contention that such a

25  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

26  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

27  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

28  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

2

1    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

2    a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

3    (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

4    1564, 1575 (9th Cir. 1990).

5            In the endeavor to establish the existence of a factual dispute, the opposing party need not

6    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

7    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

8    trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

9    the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

10   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

11   amendments).

12           In resolving a summary judgment motion, the court examines the pleadings, depositions,

13   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

14   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

15   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

16   drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa

17   County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not

18   drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

19   which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224,

20   1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a

21   genuine issue, the opposing party "must do more than simply show that there is some

22   metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

23   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

24   trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

25           "[W]hen simultaneous cross-motions for summary judgment on the same claim are before

26   the court, the court must consider the appropriate evidentiary material identified and submitted in

27   support of both motions, and in opposition to both motions, before ruling on each of them."

28   Tulalip Tribes of Wash. v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting Fair Hous.

1   Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)).  The

2   court "rule[s] on each party's motion on an individual and separate basis, determining, for each

3   side, whether a judgment may be entered in accordance with the Rule 56 standard."  Id. (quoting

4   10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure

5   § 2720 (3d ed. 1998)); see also ACLU of Nev. v. City of Las Vegas, 466 F.3d 784, 790-91 (9th

6   Cir. 2006) ("We evaluate each motion separately, giving the nonmoving party in each instance

7   the benefit of all reasonable inferences.") (citations and internal quotation marks omitted).

8          By contemporaneous notice provided on November 28, 2018 (ECF No. 12) and June 24,

9   2020 (ECF No. 79-1), plaintiff was advised of the requirements for opposing a motion brought

10  pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d

11  952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

12      III.    Plaintiff's Claims

13         This action proceeds on plaintiff's original complaint against defendants Supervising

14  Cook Fernandez and Sergeant Bryant.  (ECF No. 1 at 10.)  Plaintiff alleges that he was

15  incarcerated at the Deuel Vocational Institution ("DVI") when the alleged deprivations occurred.

16         Plaintiff alleges that he suffers from diabetes.  (Id. at 16.)  Plaintiff alleges that after

17  having carpal tunnel surgery, Dr. Win prescribed a ten day lay-in for plaintiff on December 2,

18  2016.  (Id.)  A lay-in is equivalent to being confined to quarters while a prisoner recovers from

19  surgery.  (Id.)

20         Plaintiff alleges that on December 8, 2016, December 9, 2016, December 10, 2016, and

21  December 12, 2016, defendant Fernandez failed to deliver and denied plaintiff his prescribed

22  mandated meals.  (Id.)  Plaintiff alleges that his failure to receive meals put him at risk for health

23  complications related to diabetes, including death.  (Id. at 17.)

24         Plaintiff alleges that during his shift, defendant Fernandez refused to deliver his meals,

25  stating, "if he [plaintiff] can walk he has to come to the chow hall, I am not going to deliver his

26  meals."  (Id.)

27         Plaintiff alleges that on December 2, 2016, through December 12, 2016, Correctional

28  Officers Basile, Lee and Austin had to continually call the DVI Culinary Cooks and Kitchen Staff

1   about plaintiff's meal shortages, cold meals, late meals and "no" meals.  (Id.)

2   　　　　On December 12, 2016, Officer Basile contacted defendant Bryant directly in order to get

3   plaintiff's meals delivered.  (Id.)  Plaintiff alleges that defendant Bryant did not respond and

4   plaintiff did not receive meals during defendant Fernandez's shift.  (Id.)

5   　　　　Plaintiff alleges that he relied on the kindness of other inmates to be fed to "avoid diabetic

6   complications after taking his medications."  (Id. at 21.)

7   　　　　Plaintiff alleges that defendants' failure to provide him with meals during his medical lay-

8   in violated the Eighth Amendment.

9   　　IV.　　Defendants' Summary Judgment Motion

10   　　　　A.　 Did Plaintiff Fail to Exhaust Administrative Remedies as to his Claims Against

11   　　　　　　Defendant Bryant?

12   　　　　Defendants move for summary judgment on the grounds that plaintiff failed to exhaust his

13   administrative remedies as to his claims against defendant Bryant.

14   　　　　1.　 Legal Standard for Exhaustion of Administrative Remedies

15   　　　　Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o

16   action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other

17   Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

18   administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a).  Prisoners are

19   required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549

20   U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

21   　　　　Exhaustion is required regardless of the relief sought by the prisoner and regardless of the

22   relief offered by the process, unless "the relevant administrative procedure lacks authority to

23   provide any relief or to take any action whatsoever in response to a complaint."  Booth v.

24   Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S. Ct. 1850, 1857, 1859 (2016).  The

25   exhaustion requirement applies to all prisoner suits relating to prison life.  Porter v. Nussle, 534

26   U.S. 516, 532 (2002).  An untimely or otherwise procedurally defective appeal will not satisfy the

27   exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

28   　　　　As the U.S. Supreme Court explained in Ross, 136 S. Ct. at 1856, regarding the PLRA's

5

1   exhaustion requirement:

2       [T]hat language is "mandatory": An inmate "shall" bring "no action"
3   (or said more conversationally, may not bring any action) absent
    exhaustion of available administrative remedies.... [T]hat edict
    contains one significant qualifier: the remedies must indeed be
4   "available" to the prisoner. But aside from that exception, the
    PLRA's text suggests no limits on an inmate's obligation to
5   exhaust—irrespective of any "special circumstances."

6   Id. (internal citations omitted).

7       Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply

8   with a procedural rule, prison officials ignore the procedural problem and render a decision on the

9   merits of the grievance at each available step of the administrative process.  Reyes v. Smith, 810

10  F.3d 654, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance

11  plainly put prison on notice that he was complaining about the denial of pain medication by the

12  defendant doctors, and prison officials easily identified the role of pain management committee's

13  involvement in the decision-making process).

14      2.  Discussion

15      Defendants argue that during the relevant time period, plaintiff filed one administrative

16  grievance regarding his alleged failure to receive meals while on his medical lay-in during

17  December 2016, i.e., grievance no. DVI-16-03721.  (See ECF No. 79-4 at 2-3.)  Defendants argue

18  that while grievance no. DVI-16-03271 exhausted plaintiff's claims regarding defendant

19  Fernandez, this grievance did not raise plaintiff's claims regarding defendant Bryant.

20      In grievance no. DVI-16-03721, plaintiff alleged that defendant Fernandez refused to

21  provide him with meals.  (Id. at 9.)  Plaintiff alleged that as a result of defendant Fernandez's

22  "insubordination," Officers Lee, Austin and Basile had to call and continually request plaintiff's

23  meals.  (Id.)  Plaintiff alleged that defendant Fernandez failed to follow the doctor's orders.  (Id.)

24  Grievance no. DVI-16-03271 did not contain plaintiff's claims against defendant Bryant.  (Id. at

25  9-11.)

26      In his opposition, plaintiff argues that he exhausted his claims against defendant Bryant in

27  grievance no. DVI-16-03271 because he identified defendant Bryant as "the sergeant" in this

28  grievance.  In grievance no. DVI-16-03721, plaintiff alleged that on December 12, 2016, Officer

6

1  Basile contacted "the Sergeant & he looked in the log & went to correct this situation, he never

2  returned?  The dinner meal was not delivered."  (ECF No. 95 at 5 (plaintiff's opposition); ECF

3  No. 79-4 at 11 (grievance no. DVI-16-03721).)  Plaintiff argues that at the time he filed grievance

4  DVI-16-03721, he identified defendant Bryant as the "sergeant" because he did not know

5  defendant Bryant's name.  (ECF No. 95 at 5.)

6      In support of his argument that he was unable to identify defendant Bryant by name in his

7  grievance, plaintiff cites Cal. Code Regs. tit. 15, § 3084.2(a)(3) (repealed June 1, 2020).[2]  (Id. at

8  3-4.)  Section 3084.2(a)(3) provides that in the appeals form, prisoners must list all staff members

9  involved and describe their involvement in the issue.  Cal. Code Regs. tit. 15, § 3084.2(a)(3).  If

10  the inmate does not have the requested identifying information about the staff member, he must

11  provide other available information that would assist the appeals coordinator in making a

12  reasonable attempt to identify the staff member in question.  (Id.)

13      Plaintiff's argument that he exhausted his claims against defendant Bryant because he

14  identified him as a sergeant in his grievance because he did not know his name is without merit.

15  Plaintiff's brief reference to the sergeant in the grievance did not put prison officials on notice

16  that plaintiff was also complaining that the sergeant failed to bring him food.  See Sapp v.

17  Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (a grievance suffices to exhaust a claim if it puts the

18  prison on adequate notice of the problem for which the prison seeks redress).  The clear gravamen

19  of plaintiff's grievance is that defendant Fernandez refused to provide him with meals.  The

20  prison officials reviewing grievance no. DVI-16-03271 reasonably interpreted the grievance to

21  raise only plaintiff's claims against defendant Fernandez.  (See ECF No. 79-4 at 7-3, 13-14.)

22      Plaintiff also argues that because defendant Bryant was interviewed for the second level

23  response to his grievance, he exhausted his claims against defendant Bryant.  (ECF No. 95 at 4.)

24  This argument is without merit.  The second level response to grievance no. DVI-16-03271

25  _____

26  [2] On March 25, 2020, and effective June 1, 2020, California Code of Regulations title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at

27  sections 3480 through 3487.  See Hudson v. Neuschmid, 2020 WL 3892864, at *3 n.2 (N.D. Cal. July 10, 2020). The citations in these findings and recommendations are to the regulations in

28  place during the relevant time period, rather than to the current regulations.

1   indicates that Officers Austin, Basile, Lee and defendants Bryant and Fernandez were

2   interviewed.  (ECF No. 79-4 at 14.)  The fact that defendant Bryant was interviewed regarding

3   plaintiff's allegations against defendant Fernandez does not mean that plaintiff exhausted his

4   administrative remedies as to his claims against defendant Bryant.

5          In his opposition, plaintiff argues that the court would have dismissed his claims at the

6   screening stage had he failed to exhaust his claims against defendant Bryant.  (ECF No. 95 at 3.)

7   In his complaint, plaintiff alleged that he exhausted administrative remedies as to his claims

8   against defendant Bryant.  (ECF No. 1 at 3, 10.)  Because it was not clear from the face of the

9   complaint that plaintiff had not exhausted his claims against defendant Bryant, the undersigned

10  was required to allow these claims to proceed.  See Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir.

11  2014) (except in the rare cases when a plaintiff's failure to exhaust is clear from the face of the

12  complaint, an unenumerated 12(b) motion is not the proper procedure for seeking pretrial

13  determination of the issue of administrative exhaustion).

14         For the reasons discussed above, the undersigned finds that plaintiff failed to exhaust his

15  administrative remedies as to his claims against defendant Bryant.  Defendants' summary

16  judgment motion should be granted on these grounds.  Because the undersigned finds that

17  plaintiff failed to exhaust administrative remedies as to his claims against defendant Bryant, there

18  is no need to address defendants' motion for summary judgment on the grounds that defendant

19  Bryant did not violate plaintiff's Eighth Amendment rights.

20         B.   Did Defendant Fernandez Violate Plaintiff's Eighth Amendment Rights?

21         At the outset, the undersigned finds that plaintiff's complaint raises two Eighth

22  Amendment claims based on the alleged denial of meals.  First, plaintiff alleges that his failure to

23  receive meals violated his Eighth Amendment right to adequate medical care because he required

24  food based on his diabetes.[3]  Second, plaintiff is raising a conditions-of-confinement Eighth

25  _____

26  [3]  Plaintiff may state an Eighth Amendment claim for inadequate medical care against a
    correctional official who is not a medical provider.  See, e.g., Akhtar v. Mesa, 698 F.3d 1202,
    1213 (9th Cir. 2012) (prisoner stated claim against correctional officers under the Eighth

27  Amendment for deliberate indifference to a serious medical need where plaintiff alleged
    correctional officers ignored doctor's orders for, among other things, a bottom bunk.); see also

28  Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999) (prison officials act with deliberate

1    Amendment claim based on the denial of meals.

2          Defendants' summary judgment motion focuses on plaintiff's Eighth Amendment

3    conditions-of-confinement claim.  The undersigned herein addresses both of plaintiff's Eighth

4    Amendment claims because the legal standards are similar.

5          1.    Standards for Eighth Amendment Claims

6          *Legal Standard for Claim Alleging Violation of Eighth Amendment Right to Adequate*

7    *Medical Care*

8          The Eighth Amendment is violated only when a prison official acts with deliberate

9    indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th

10   Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th

11   Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  To state a claim a plaintiff "must

12   show (1) a serious medical need by demonstrating that failure to treat [his] condition could result

13   in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the

14   defendant's response to the need was deliberately indifferent."  Wilhelm v. Rotman, 680 F.3d

15   1113, 1122 (9th Cir. 2012) (citing Jett, 439 F.3d at 1096).  "Deliberate indifference is a high legal

16   standard," Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown by "(a) a

17   purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm

18   caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The

19   requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of

20   due care.  Snow, 681 F.3d at 985 (citation and quotation marks omitted).

21         "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of

22   action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v.

23   Gamble, 429 U.S. 97, 105-06 (1976)).

24         Further, "[a] difference of opinion between a physician and the prisoner—or between

25   medical professionals—concerning what medical care is appropriate does not amount to

26   deliberate indifference."  Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th

27   _____

28   indifference when they intentionally interfere with treatment prescribed by a doctor).

9

Cir. 1989)).  Rather, a plaintiff is required to show that the course of treatment selected was "medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health."  Snow, 681 F.3d at 988 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

*Legal Standards for Eighth Amendment Conditions-of-Confinement Claim*

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Farmer v. Brennan, 511 U.S. 825 (1994); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).  To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference..." Labatad v. Corrs. Corp. of Amer., 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Gibson v. Cty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious."  Farmer at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety."  Id. at 837; Anderson v. Cty. of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).

2.  Undisputed Facts

During all relevant times, plaintiff was housed at DVI.

During all relevant times, defendant Fernandez was a Supervising Correctional Cook at DVI.

On December 1, 2016, plaintiff received a right carpal tunnel release surgery and right ulnar nerve release surgery at San Joaquin General Hospital.  After the surgery, plaintiff's right arm was placed in a protected splint, and he returned to DVI for his post-operative recovery.

During the events at issue, plaintiff resided in Housing Unit L3.  Housing Unit L3 was a general population, or mainline, housing unit.

On December 2, 2016, plaintiff's primary care physician at DVI issued a CDCR Form

10

1  7257 Health Care Lay-In Order that directed plaintiff not to work and have his meals in his cell

2  from December 2, 2016, to December 12, 2016.

3        3.  Was Defendant Fernandez Responsible for Plaintiff's Missing Meals?

4        Defendants argue that defendant Fernandez should be granted summary judgment because

5  he was not responsible for plaintiff's failure to receive meals.  This argument applies to both of

6  plaintiff's Eighth Amendment claims.

7        *Defendants' Argument and Evidence*

8        In support of their argument that defendant Fernandez was not responsible for plaintiff's

9  failure to receive meals, defendants cite defendant Fernandez's declaration.  Defendants argue

10  that in his declaration, defendant Fernandez states that in December 2016, it was the

11  responsibility of the housing unit officers, and not defendant Fernandez, to deliver in-cell meals.

12  The undersigned sets forth the relevant section of defendant Fernandez's declaration herein:

13  
14  
15  
16  
17  
> 6.  The DVI Food Services Department generally does not track or note the meals that the general population inmates receive.  The Food Services Department only tracks meals if an inmate is on a kosher, halal, or vegetarian diet, or if the inmate is being housed in an administrative segregation unit or at the medical facility.  The Food Services Department does not produce special meals for diabetic inmates.  Food Services staff members do not have access to inmate medical records and do not track the meals being served to general population inmates with diabetes.

18  
19  
20  
21  
22  
23  
> 7.  Prior to December 2016, correctional officers assigned to the DVI dining halls (culinary officers) had an arrangement with the correctional officers assigned to the DVI mainline housing units (housing unit officers) for delivery of in-cell meals.  The housing unit officers would contact the culinary officers and request to have meal trays delivered to the mainline housing units for any inmates who needed them.  The culinary officers would then obtain the requested number of meals trays from the dining hall and food service staff, and then arranged for inmate porters to transport the meal trays from the dining hall to the mainline housing units for distribution.

24  
25  
26  
> 8.   Around December 2016, the DVI Food Services Department changed the in-cell meal delivery process, partly because the Food Service Department had some difficulty confirming whether the meal trays being delivered were going to inmates with valid chronos or medical lay-in orders.

27  
28  
> 9.  My immediate supervisor, T. Madsen, advised me that the Food Services Department would no longer accept meal delivery requests from housing unit officers.  Going forward, I was instructed to continue providing meal trays to housing unit officers who requested

11

them, but that the housing unit officers themselves were to come to the dining hall and pick up the meal trays. I was also instructed to not deliver any meal trays to the mainline housing units, or to arrange for inmate porters to deliver the meal trays to the mainline housing units. To the best of my knowledge, the Food Services Department gave similar instructions to the other food service staff members, to the culinary officers, and to the housing unit officers.

10. In early December 2016, I was contacted by one of the housing unit officers assigned to one of the mainline housing units in DVI Facility A. The officer advised me that plaintiff Clarence Ellesbury (H-28893) had recently had arm surgery and requested that a meal tray be delivered to Ellesbury at his mainline unit. To the best of my recollection, this was the first time I responded to a request for a meal to be delivered to Ellesbury's housing unit. I was never provided a copy of any medical order or chrono indicating that Ellesbury was to receive in-cell meals from December 2 to December 12, 2016. I also did not know about Ellesbury's medical history and was not aware he had ever been diagnosed with diabetes. Because I did not know about Ellesbury's medical order or medical history at the time, and because Ellesbury was housed on a mainline unit and not at the medical facility, I did not know there was any medical necessity for Ellesbury to have his meals in his cell.

11. Although the prior in-cell meal delivery process had ended, I delivered a meal tray to Ellesbury's housing unit on the day I received the request because the process had just changed. After delivering the meal tray, I reminded the officer that the prior practice had ended, and that the housing unit officers should come pick up Ellesbury's meal trays from the dining hall going forward. I did not communicate or interact with Ellesbury that day, and I did not communicate or interact with Ellesbury at any other time during the month of December 2016.

12. I never refused to provide any of Ellesbury's meal trays to his housing unit officers. I never instructed my staff members to not provide Ellesbury's meal trays to his housing unit officers. I am not aware of any of my staff members ever refusing to provide Ellesbury's meal trays to his housing unit officers.

13. After I personally delivered Ellesbury's one requested meal tray, I was not aware whether Ellesbury requested or missed any of his other meals on December 8, 2016, December 9, 2016, December 10, 2016 or December 12, 2016. Ellesbury never informed me that he had not received any of his meals on those days. Because I was never provided a copy of a medical order indicating Ellesbury needed to receive an in-cell meal, and because I did not know of Ellesbury's medical history, I did not keep track of whether Ellesbury's housing unit officers were picking up meal trays for Ellesbury. Had I known Ellesbury could not come to the dining hall and was not regularly receiving his meals on those days, I would have taken affirmative steps to have custody staff pick up and deliver Ellesbury's meal trays to him.

14. I am aware that Ellesbury has accused me of interfering with or

12

1
2
3

> refusing to provide him with meals on December 8, 2016, December 9, 2016, December 10, 2016 and December 12, 2016. However, I was not working on December 12, 2016. That day was my regular day off. If Ellesbury did not receive all of his in-cell meals on December 12, 2016, I do not know the reason why that occurred…

4

(ECF No. 79-5 at 2-5.)

5
6
7
8

In the summary judgment motion, defendants also argue that plaintiff's only evidence that defendant Fernandez was personally involved with his missing meals, i.e., plaintiff's deposition testimony, is hearsay and inadmissible. The undersigned sets forth plaintiff's relevant deposition testimony herein.

9
10
11
12
13
14
15

At his deposition, plaintiff testified that he believed defendant Fernandez was responsible for his failure to receive meals because the unit officers would call and tell defendant Fernandez that plaintiff's meals were not being delivered. (Plaintiff's deposition at 22.) Plaintiff testified that each time the officers told plaintiff that defendant Fernandez told them that, "As long as he can walk, I'm not going to deliver his meals. He has to come to the chow hall or I'm not going to feed him." (Id. at 18-22.) Plaintiff identified the officers he spoke to as Mr. Basile, Mr. Lee and Mr. Austin. (Id. at 25.)

16
17
18
19
20
21
22
23
24

Plaintiff testified that he was personally present when Officer Basile picked up the telephone and called about plaintiff's failure to receive meals. (Id. at 40.) Plaintiff testified that he heard Officer Basile say to the person with whom he was speaking that plaintiff had a medical lay-in, that plaintiff was diabetic and that he needed his meals. (Id.) Plaintiff testified that, "And that's when he [Officer Basile] relayed back to me before he hung up, Mr. Fernandez says that's going to refuse, he's refusing to bring them down." (Id.) Officer Basile told plaintiff that defendant Fernandez told him that if plaintiff was able to come to the chow hall, plaintiff had to come to the chow hall. (Id.) Plaintiff testified that he could not hear what defendant Fernandez told Officer Basile over the phone. (Id. at 41.)

25
26
27

Plaintiff testified that Officer Lee told him that he had spoken with defendant Fernandez by telephone and that defendant Fernandez stated that he was not going to deliver any meals as long as plaintiff could walk to the chow hall. (Id. at 48.)

28

Plaintiff testified that he was present when Officer Austin called the culinary department

1  regarding plaintiff's missing meal.  (Id. at 52.)  Plaintiff heard Officer Austin tell the person with

2  whom he was speaking that plaintiff was diabetic and needed his meals and a doctor had ordered

3  a lay-in.  (Id.)  After concluding the telephone conversation, Officer Austin told plaintiff that he

4  had spoken with defendant Fernandez and defendant Fernandez said he was not going to deliver

5  plaintiff's meal.  (Id.)

6       Hearsay is a statement made out of court and offered for the truth of the matter asserted

7  therein.  Fed. R. Evid. 801(c).  However, "[i]f the significance of an out-of-court statement lies in

8  the fact that the statement was made and not in the truth of the matter asserted, then the statement

9  is not hearsay."  Calmat Co. v. U.S. Dep't of Labor, 364 F.3d 1117, 1124 (9th Cir. 2004).  Where

10  evidence presents a hearsay within hearsay problem, "each layer of hearsay must satisfy an

11  exception to the hearsay rule."  Sana v. Hawaiian Cruises, Ltd., 181 F.3d 1041, 1045 (9th Cir.

12  1999); see also Fed. R. Evid. 805.

13       The undersigned finds that plaintiff's deposition testimony regarding what he allegedly

14  heard Officers Basile, Austin and Lee state during their phone conversation with the person they

15  later identified to plaintiff as defendant Fernandez is hearsay.  The undersigned also finds that

16  plaintiff's deposition testimony that Officers Basile, Austin and Lee allegedly told plaintiff that

17  defendant Fernandez told them that he would not deliver plaintiff's meals is hearsay.

18       The undersigned also finds that defendant Fernandez's statements in his declaration

19  regarding what his supervisor, T. Madsen, allegedly told him regarding the change in the meal

20  delivery policy is hearsay.[4]  For this reason, the undersigned cannot consider defendant

21  Fernandez's statements in his declaration regarding the alleged change in the meal delivery policy

22  in December 2016.

23       Defendants also argue that defendant Fernandez's work schedule for December 2016

24  shows that he worked anywhere from eight to sixteen hours per day on December 2, 3, 4, 6 and 7,

25  2016, i.e., days where plaintiff admittedly received all of his in-cell meals.  (See ECF No. 79-5 at

26  7-8.)  Defendants note that defendant Fernandez was not working on December 12, 2016, one of

27   

28  _____

[4]  Defendants' summary judgment motion does not contain a declaration from T. Madsen regarding the alleged change in policy.

1    the days plaintiff claims he did not receive his evening meal.  (Id. at 7.)  Defendants argue that

2    because there is no correlation between defendant Fernandez's work shifts and plaintiff's missing

3    meals, plaintiff's allegations that he only missed meals during defendant Fernandez's work shifts

4    amounts to nothing more than unfounded speculation.

5        *Plaintiff's Opposition*

6        In his verified opposition, plaintiff argues that defendant Fernandez was personally

7    responsible for delivering his meals in December 2016.  (See ECF No. 95 at 5-8.)  In support of

8    this argument, plaintiff cites defendant Fernandez's response to interrogatories.  (Id.)  Plaintiff

9    does not attach the interrogatories cited in his opposition to the opposition.[5]  (Id.)

10        In his verified opposition, plaintiff also alleges that he incorrectly alleged in his complaint

11    that he missed meals on December 12, 2016.  (Id. at 9.)  Plaintiff alleges that he should have

12    alleged that he missed meals on December 11, 2016.  (Id.)  Plaintiff also clarifies the meals he

13    allegedly missed.  (Id.)  Plaintiff missed dinner on Thursday December 8, 2016.  (Id.)  Plaintiff

14    missed breakfast, lunch and dinner on Friday December 9, 2016.  (Id.)  Plaintiff missed dinner on

15    Saturday December 10, 2016.  (Id.)  Plaintiff missed dinner on Sunday December 11, 2016.  (Id.)

16        In their reply to plaintiff's opposition, defendants argue that plaintiff now seeks to amend

17    his allegations to assert he missed a meal on December 11, 2012, because the evidence shows that

18    neither defendant Bryant nor defendant Fernandez were working on December 12, 2012.

19    Defendants argue that plaintiff's claim in his opposition that he missed a meal on December 11,

20    2012, rather than December 12, 2012, as he testified at his deposition (see plaintiff's deposition at

21    59), is barred by the sham affidavit rule.  For the reasons stated herein, the undersigned agrees

22    with this argument.

23        "[ ]The Ninth Circuit has held that 'a party cannot create an issue of fact by [submission

24    of] an affidavit contradicting his prior deposition testimony' where the court determines that the

25    later affidavit is merely ''sham' testimony that flatly contradicts earlier testimony.'"  Ana Mora et

26

---

27    [5]  It is not clear that defendant Fernandez's responses to interrogatories cited in the opposition
support plaintiff's claim that defendant Fernandez was responsible for delivering his meals in
28    December 2016.

al. v. City of Garden Grove et al., 2020 WL 4760184, at *7 (C.D. Cal. May 1, 2020) (citing to

Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1999)).  "The rationale underlying

the sham affidavit rule is that a party ought not be allowed to manufacture a bogus dispute with

himself to defeat summary judgment."  Nelson v. City of Davis, 571 F.3d 924, 928 (9th Cir.

2009).

The Ninth Circuit in Yeager reiterated two important limitations on the sham affidavit

rule:  (1) the district court must make a "factual determination that the contradiction was actually

a sham"; and (2) the "inconsistency between a party's deposition testimony and subsequent

affidavit must be clear and unambiguous."  Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir.

2012).  For example, "[ ]an affidavit might not be a sham if the affiant's actions were the result of

honest discrepancy, a mistake, or the result of newly discovered evidence ... [or] if the affiant

gives a plausible excuse for the contradiction ...."  Jack v. Trans World Airlines, 854 F. Supp.

654, 660 (N.D. Cal. 1994); see Yeager, 693 F.3d at 1080 ("[T]he nonmoving party is not

precluded from elaborating on, explaining or clarifying prior testimony elicited by opposing

counsel on deposition ... ") (quoting Van Asdale v. Int'l Game Tech., 577 F.3d 989, 999 (9th Cir.

2009)).

In his opposition, plaintiff alleges that he discovered that he missed a meal on December

11, 2016, rather than December 12, 2016, after reviewing documents he received from defendants

in response to his request for production of documents, set two.  (ECF No. 95 at 9.)  Plaintiff did

not attach the documents which contain this information to his opposition.

The undersigned observes that plaintiff was deposed on December 12, 2019.  On January

26, 2020, pursuant to the mailbox rule, plaintiff filed a motion to compel regarding defendants'

responses to his request for production of documents, set two.  (ECF No. 56.)  In the motion to

compel, plaintiff appeared to claim that he served defendants with his request for production of

documents, second set, on November 24, 2019.  (Id. at 1.)  Plaintiff did not state when he

received defendants' response.  (Id.)  The undersigned denied plaintiff's motion to compel filed

January 26, 2020, as untimely.  (ECF No. 66.)

Based on the date plaintiff allegedly served defendants with his request for production of

16

documents, set two, it appears unlikely that he had received defendants' responses to this discovery request at the time of his December 12, 2019 deposition.  Nevertheless, the undersigned is troubled that plaintiff waited to inform defendants that he allegedly failed to receive a meal on December 11, 2016, rather than December 12, 2016, until he filed his motion for summary judgment and opposition to defendants' summary judgment.  The dates on which plaintiff allegedly failed to receive his meals are material allegations.

Based on the circumstances described above, the undersigned finds that plaintiff's new claim that he failed to receive a meal on December 11, 2016, rather than December 12, 2016, is not the result of an honest discrepancy, a mistake, or the result of newly discovered evidence. Plaintiff has apparently known this information since December 2019 or January 2020.  In addition, plaintiff did not provide the discovery documents he alleges demonstrate that he failed to receive a meal on December 11, 2016, rather than December 12, 2016.  Accordingly, plaintiff's claim that he did not receive a meal on December 11, 2016, is stricken pursuant to the sham affidavit rule.

*Discussion*

For the reasons stated herein, the undersigned finds that defendants' summary judgment motion on the grounds that defendant Fernandez was not responsible for delivering plaintiff's meals during plaintiff's December 2016 medical lay-in should be denied.

Defendants argue that defendant Fernandez was not responsible for delivering plaintiff's meals in December 2016 because defendant Fernandez's supervisor, T. Madsen, told defendant Fernandez that the meal delivery policy changed so that the culinary department was no longer responsible for delivering the meals requested by housing officers.  As discussed above, the statements in defendant Fernandez's declaration regarding the alleged change in policy are hearsay.  For that reason, the undersigned finds that defendants have not provided admissible evidence demonstrating that the meal delivery policy changed in December 2016 so that the culinary department, and defendant Fernandez, were no longer responsible for delivering meals.

Moreover, the record suggests that at the time of plaintiff's medical lay-in, the culinary department, and defendant Fernandez, continued to be responsible for delivering meals to inmates

17

on medical lay-ins.  While plaintiff's deposition testimony regarding the phone conversations

Officers Basile, Lee and Austin allegedly had with defendant Fernandez may be hearsay,

plaintiff's deposition testimony that he told these officers that he did not receive his meals is not

hearsay.  Plaintiff's deposition testimony that he saw these officers make telephone calls after

receiving this information from plaintiff is not hearsay.  Plaintiff's deposition testimony that he

did not receive his meals after these officers made the telephone calls is not hearsay.

In addition, the response to grievance no. DVI 16-03271 states that Officers Austin,

Basile, and Lee were interviewed regarding plaintiff's claim that that he did not receive his meals.

(ECF No. 79-4 at 13.)  The second level response found that staff, i.e., defendant Fernandez, *did*

violate CDCR policy "with respect to one or more of the issues appealed."  (Id. at 14.)  Plaintiff's

admissible deposition testimony and grievance no. DVI-16-03271 suggest that defendant

Fernandez was responsible for delivering plaintiff's meals.

The undersigned next considers defendant' argument that plaintiff's allegations that he

only missed meals during defendant Fernandez's shift is based on unfounded speculation because

there is no correlation between defendant Fernandez's work shifts and plaintiff's missing meals.

The timecard attached to defendant Fernandez's declaration reflects that defendant Fernandez

worked on days during plaintiff's medical lay-in when plaintiff apparently received meals.

While these circumstances undermine plaintiff's claim that defendant Fernandez was responsible

for his failure to receive meals, the undersigned may not weigh the evidence to determine the

truth of the matter on summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).

For the reasons discussed above, the undersigned finds that the record does not contain

sufficient evidence demonstrating that defendant Fernandez was not responsible for delivering

plaintiff's meals during plaintiff's medical lay-in during December 2016.  Defendants' motion for

summary judgment on these grounds should be denied.

4.   Did Plaintiff Suffer a Sufficiently Serious Deprivation ?

Defendants move for summary judgment on the grounds that plaintiff did not suffer a

sufficiently serious deprivation so as to violate the Eighth Amendment.  The undersigned

18

1   understands defendants' argument to be that they are entitled to summary judgment on the

2   grounds that plaintiff suffered no injury or harm as a result of not receiving certain meals on the

3   dates alleged.  This argument applies to both of plaintiff's Eighth Amendment claims.

4       *Did Plaintiff Suffer Sufficient Harm to Violate His Eighth Amendment Right to Adequate*

5   *Medical Care?*

6       As stated above, the subjective prong of a claim alleging inadequate medical care in

7   violation of the Eighth Amendment requires a showing of harm caused by the indifference.  Jett,

8   439 F.3d 1091, 1096 (9th Cir. 2006).[6]  "A prisoner need not show that his harm was substantial;

9   however, such would provide additional support for the inmate's claim that the defendant was

10   deliberately indifferent to his needs."  Id.

11       Citing plaintiff's deposition transcript, defendants argue that the only injury plaintiff

12   alleges he suffered as a result of failing to receive his meals was stress about potentially going

13   into a diabetic coma if he did not receive his meals.  (ECF No. 79-2 at 24.)  At his deposition,

14   when asked to describe all of the injuries he suffered as a result of not receiving his meals,

15   plaintiff testified that he experienced "multiple stress of wondering if I was going to go into a

16   coma or not."  (Plaintiff's deposition at 62.)  Plaintiff testified that he did not go into a coma or

17   experience any other physical injuries or symptoms.  (Id.)

18       Defendants also provided a declaration by Dr. B. Feinberg, M.D. in support of their

19   argument that plaintiff suffered no injuries as a result of the alleged deprivation of meals.  (See

20   ECF No. 79-7.)  In his declaration, Dr. Feinberg states that there is nothing in plaintiff's medical

21   records showing that plaintiff experienced any symptoms of a diabetic coma, or any physical or

---

22   [6]   Defendants do not argue that plaintiff did not have a serious medical need, i.e., the objective
23   element of an Eighth Amendment claim.  The undersigned observes that  In Lolli v. County of
    Orange, 351 F.3d 410 (9th Cir. 2003), the Ninth Circuit held that diabetes is a "serious medical
24   need," and that "[l]eaving a diabetic without proper food or insulin …creates an objectively,
    sufficiently risk of harm."  351 F.3d at 420 (citations omitted).  The plaintiff in Lolli had Type I
25   diabetes who apparently took insulin.  Id. at 419-420.  In the instant case, plaintiff has Type II
    diabetes and does not take insulin.  (ECF No. 95 at 10 (plaintiff's opposition alleging that he has
26   Type II diabetes); ECF No. 79-7 at 3 (declaration of Dr. Feinberg stating that plaintiff take
    metformin to control his blood sugar level for his "very mild" diabetes).)  For purposes of these
27   findings and recommendations, the undersigned finds that plaintiff's diabetes was a serious
    medical need.
28

19

1   mental injuries, as a result of the meals he missed.  (See id. at 5.)  Dr. Feinberg also states that

2   plaintiff's diabetes was mild and that plaintiff did not (and would not) have suffered any serious

3   side effects from taking his diabetes medication without food.  (Id.)  Dr. Feinberg states that in his

4   medical opinion, plaintiff's claim of suffering harm related to being diabetic and missing medical

5   meals are not supported by his medical records.  (Id.)

6          In his opposition, plaintiff provides no evidence demonstrating that he suffered any harm

7   from missing his meals other than the emotional harm discussed above.

8          The undersigned finds that plaintiff has failed to demonstrate a violation of his Eighth

9   Amendment right to adequate medical care because there is no evidence that he suffered any

10   physical harm as a result of not receiving meals on the dates alleged.  For this reason, defendants'

11   summary judgment motion should be granted.  See Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)

12   (harm is an element of an Eight Amendment claim alleging inadequate medical care); see also

13   O'Neal v. Price, 2006 WL 482935, at * 6 (E.D. Cal. March 1, 2006) (plaintiff, alleging violation

14   of his Eighth Amendment right to adequate medical care, "alleg[ing] no bodily injury or physical

15   harm whatever, has not alleged a sufficiently serious deprivation.").

16          Furthermore, to the extent that plaintiff's injury is based solely on emotional harm, that

17   showing, without more, is inadequate to state a claim under the Prison Litigation Reform Act

18   ("PLRA"):

19              No Federal civil action may be brought by a prisoner confined in a
               jail, prison or other correctional facility for mental or emotional
20              injury suffered while in custody without a prior showing of physical
               injury.
21

22   42 U.S.C. § 1997e(e).

23          The Ninth Circuit has determined that section 1997e(e)'s "physical injury" requirement

24   demands a showing of a "physical injury that need not be significant but must be more than de

25   minimis" before a prisoner may recover damages for emotional injuries.  Oliver v. Keller, 289

26   F.3d 623, 627 (9th Cir. 2002); see also Wilson v. Dovery, 369 Fed. Appx. 844, at *1 (9th Cir.

27   2010) (affirming dismissal of prisoner's deliberate indifference claim based on "lack of privacy in

28   his medical care" because plaintiff "fail[ed] to allege any physical symptoms or the type of harm

1    required for a deliberate indifference claim under the Prison Litigation Reform Act") (citing 42

2    U.S.C. § 1997e(e) and <u>Oliver</u>, 289 F.3d at 627-28); <u>Jones v. Haga</u>, 2020 WL 5991618, at *6-7

3    (C.D. Cal. March 20, 2020) (pretrial detainee's claim for inadequate medical care barred by

4    section 1997e(e) where only injury alleged was "mental anguish-mental distress"; <u>Wood v. Idaho</u>

5    <u>Dep't of Corr.</u>, 391 F. Supp. 2d 852, 867 (D. Idaho 2005) (prisoner's section 1983 deliberate

6    indifference claim for "worry and distress" suffered during delay of scheduled hepatitis

7    vaccinations barred by section 1997e(e) where prisoner did not contract hepatitis during the

8    delay); <u>cf.</u> <u>Oliver</u>, 289 F.3d at 629 (constitutional violation causing only mental or emotional

9    injury may support an award for nominal or punitive damages under section 1997e(e).)

10           Accordingly, defendant Fernandez should be granted summary judgment as to plaintiff's

11   claim alleging violation of his Eighth Amendment right to adequate medical care on the grounds

12   that plaintiff suffered no physical harm.

13           *Did Plaintiff Suffer Harm Sufficient to Violate His Eighth Amendment Right to Adequate*

14   *Conditions of Confinement?*

15           Defendants argue that they are entitled to summary judgment as to plaintiff's Eighth

16   Amendment conditions-of-confinement claim on the grounds that plaintiff failed to suffer any

17   harm as a result of missing meals.

18           As discussed above, in his verified opposition, plaintiff clarifies that he missed the

19   following meals:  1) dinner on December 8, 2016; 2) breakfast, lunch and dinner on December 9,

20   2016; 3) dinner on December 10, 2016; and 4) dinner on December 12, 2016.  (ECF No. 95 at 9.)

21   As discussed above, defendants have presented undisputed evidence that defendant Fernandez did

22   not work on December 12, 2016.  Therefore, plaintiff is claiming that defendant Fernandez denied

23   him five meals over three consecutive days, including four consecutive meals.

24           Adequate food is a basic human need protected by the Eighth Amendment.  <u>See</u> <u>Keenan v.</u>

25   <u>Hall</u>, 83 F.3d 1083, 1091 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998).  In the context

26   of meals, the Eighth Amendment requires "…that prisoners receive food that is adequate to

27   maintain health."  <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1456 (9th Cir. 1993).

28           In <u>Foster v. Runnels</u>, 554 F.3d 807 (9th Cir. 2009), the Ninth Circuit held that the

21

1    "sustained deprivation of food can be cruel and unusual punishment when it results in pain

2    without any penological purpose." 554 F.3d at 814.  In Foster, the Ninth Circuit found that the

3    denial of 16 meals in 23 days "is a sufficiently serious deprivation because food is one of life's

4    basic necessities." Id. at 812-13.  In support of this finding, the Ninth Circuit noted that the

5    record contained evidence that the inmate had suffered physical harm as a result of the denial of

6    meals:

7                    Although food is a basic human need, the Eighth Amendment
                    "requires only that prisoners receive food that is adequate to maintain
8                    health." LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993).  The
                    record contains no evidence of the nutritional value of the prison
9                    meals or whether one meal could provide Foster with sufficient
                    calories and nutrients to sustain him for an entire day. Foster alleges
10                   that he lost weight during the period in which he was denied meals
                    and that he suffered headaches and dizziness as a result of inadequate
11                   nutrition. Because all inferences must be drawn in Foster's favor, it
                    should be presumed that the meals Foster was provided were
12                   inadequate to maintain health and that he has suffered a cognizable
                    harm under the Eighth Amendment.
13

14   554 F.3d at 813 n.2.

15          In the instant case, plaintiff does not allege that he suffered any harm, other than

16   emotional harm, as a result of the deprivation of his meals, as required to demonstrate an Eighth

17   Amendment violation.  On these grounds, defendant Fernandez should be granted summary

18   judgment as to plaintiff's Eighth Amendment conditions-of-confinement claim.  See also 42

19   U.S.C. § 1997e(e).  Cf. Oliver, 289 F.3d at 629 (constitutional violation causing only mental or

20   emotional injury may support an award for nominal or punitive damages under section 1997e(e).)

21          In the alternative, the undersigned finds that the number of meals defendant Fernandez

22   allegedly failed to provide plaintiff do not, as a matter of law, violate the Eighth Amendment.

23   Other cases finding a sufficiently serious deprivation involve the plaintiff being deprived of food

24   entirely for more than two consecutive days.  See Dearman v. Woodson, 429 F.2d 1288, 1289

25   (10th Cir. 1970) (no food for 50 ½ hours); Reed v. McBride, 178 F.3d 849, 853 (7th Cir. 1999)

26   ("infirm" plaintiff did not receive food for 3-4 days); Sala v. Cox, 2012 WL 3536720, at *4 (D.

27   Nev. Aug. 12, 2012) (as a matter of law, no food for three days is inadequate to maintain a

28   person's health); cf. Simmons v. Cook, 154 F.3d 805 (8th Cir. 1998) (Eighth Circuit upheld a

1   judgment for two paraplegic inmates after a bench trial, finding that the deprivation of four

2   consecutive meals violated the Eighth Amendment where the wheelchairs of the plaintiffs could

3   not maneuver around the cell bunk to reach the food tray slot).

4       For these reasons, the undersigned recommends that defendant Fernandez be granted

5   summary judgment as to plaintiff's Eighth Amendment conditions-of-confinement claim.[7]

6       *5.*   Did Defendant Fernandez Purposefully Deny Meals to Plaintiff?

7       Defendants move for summary judgment on the grounds that there is no evidence that

8   defendant Fernandez purposefully denied meals to plaintiff.  As discussed above, to establish

9   subjective deliberate indifference for a claim alleging a violation of the Eighth Amendment right

10  to adequate medical care, the record must show that the defendant purposefully failed to respond

11  to plaintiff's medical needs.  Jett, 439 F.3d 1091, 1096 (9th Cir. 2006).  To establish deliberate

12  indifference for an Eighth Amendment conditions-of-confinement claim, the plaintiff must show

13  that the "official was aware of the risk to the inmate's health or safety and that the official

14  deliberately disregarded the risk."  Foster, 554 F.3d at 814.

15      Defendants argue that in his declaration, defendant Fernandez stated that after delivering

16  one meal tray to plaintiff's housing unit, defendant Fernandez stated that he was not aware that

17  plaintiff had requested or missed any of his meals on December 8, 9, 10 or 12.  Defendants also

18  state that defendant Fernandez was not working on December 12, 2016, as reflected in his time

19  sheet.  Defendants argue that defendant Fernandez was not aware of plaintiff's lay-in order.  On

20  these grounds, defendants argue that defendant Fernandez did not act with deliberate indifference.

21      As discussed above, plaintiff testified at his deposition that he told Officers Austin, Basile

22  and Lee that he did not receive his meals.  Plaintiff testified that he then witnessed these three

23  officers make a telephone call after receiving this information.  Plaintiff testified that he did not

24  receive his meals after these officers made these telephone calls.  In addition, the response to

---

25  [7]   The undersigned observes that in his verified complaint, plaintiff alleges that he was able to get

26  food from other inmates during the times he did not receive meals, which may explain plaintiff's
    deposition testimony that he only suffered emotional harm as a result of not receiving meals.

27  (ECF No. 1 at 21.)  However, at his deposition, plaintiff also testified that during the time he did
    not receive meals, he did not try to get food from anywhere else to eat.  (Plaintiff's deposition at

28  61.)

grievance no. DVI 16-03271 states that Officers Austin, Basile, and Lee were interviewed regarding plaintiff's claim that that he did not receive his meals.  (ECF No. 79-4 at 13.)  The second level response found that staff, i.e., defendant Fernandez, violated CDCR policy "with respect to one or more of the issues appealed."  (Id. at 14.)  This evidence suggests that defendant Fernandez knew that plaintiff failed to receive his meals.  Accordingly, based on this evidence, the undersigned finds that whether defendant Fernandez knew that plaintiff failed to receive his meals is a materially disputed fact.  For this reason, defendant Fernandez is not entitled to summary judgment as to plaintiff's Eighth Amendment conditions-of-confinement claim on the grounds that he did not knowingly deny meals to plaintiff.

In order to succeed on his claim alleging that defendant Fernandez violated his Eighth Amendment right to adequate medical care, plaintiff must demonstrate that defendant Fernandez knew that plaintiff was diabetic at the time he allegedly denied meals to plaintiff.  For the reasons stated herein, the undersigned finds that the record contains no admissible evidence that defendant Fernandez knew that plaintiff was diabetic at the time he allegedly denied meals to plaintiff.

In his declaration, defendant Fernandez states that he did not know that plaintiff was diabetic.  In his pleadings filed in this action, plaintiff does not allege that he told defendant Fernandez that he was diabetic.  In his pleadings, plaintiff also does not allege that he told the officers with whom he spoke regarding his missing meals that he was diabetic.

At his deposition, plaintiff did not testify that he told any of the officers with whom he spoke about his missing meals that he was diabetic.  Plaintiff testified that he "explained the situation" to defendant Bryant and showed him his lay-in order.[8]  (Plaintiff's deposition at 24.)  Plaintiff did not testify that he told defendant Bryant that he was diabetic.  (Id. at 25-26, 54.)  In his declaration submitted in support of defendants' summary judgment motion, defendant Bryant does not address whether he knew that plaintiff was diabetic on December 10, 2016.  (ECF No. 79-6.)

---

[8]   The lay-in order does not state that plaintiff was diabetic.  (See ECF No. 79-7 at 20.)

1    Plaintiff testified that he told Officer Basile on two different days that he did not receive a

2    meal.  (Id. at 40-41, 43-44.)  Plaintiff did not testify that he told Officer Basile that he was

3    diabetic.  Plaintiff could not remember what specifically he said to Officer Lee.  (Id. at 49.)

4    Plaintiff also testified each of the officers on duty knew that his meals were supposed to be

5    delivered to him because of his operation.  (Id.)  Plaintiff did not testify that the officers knew that

6    he was diabetic.  (Id.)  Plaintiff did not testify at his deposition regarding what he told Officer

7    Austin.  (See id. at 52-53.)

8    The undersigned also observes that the responses to plaintiff's grievance no. DVI-16-

9    03271 do not address plaintiff's claim that his failure to receive food could have caused him harm

10   based on his diabetes.  (See ECF No. 79-4 at 7-8, 13-14.)  In this grievance, plaintiff did not claim

11   that he told the officers with whom he spoke about his failure to receive meals that he had

12   diabetes.  (Id. at 9-10.)

13   Had plaintiff provided admissible evidence that he told the officers with whom he spoke

14   about his missing meals that he was diabetic, the undersigned would be inclined to find that

15   whether defendant Fernandez knew plaintiff was diabetic is a disputed material fact.[9]  However,

16   the record contains no admissible evidence contradicting defendant Fernandez's statement in his

17   declaration that he did not know that plaintiff was diabetic at the time he allegedly denied

18   plaintiff meals in December 2016.  For this reason, the undersigned finds that the record contains

19   no evidence demonstrating that defendant Fernandez purposefully ignored plaintiff's serious

20   medical need, i.e., diabetes.  Accordingly, for this reason, defendant Fernandez should be granted

21   summary judgment as to plaintiff's claim alleging violation of his right to adequate medical care.

22        6.  Qualified Immunity

23   Defendants argue that defendant Fernandez should be granted summary judgment on the

24   grounds that he is entitled to qualified immunity

25   In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to

26   determine whether qualified immunity exists.  First, the court asks:  "Taken in the light most

27

28   [9]  As discussed above, plaintiff's deposition testimony that he allegedly heard the officers tell defendant Fernandez on the telephone that plaintiff is diabetic is hearsay.

favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Id.</u> at 201.  If "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." <u>Id.</u>  To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Id.</u> at 202 (internal quotation marks and citation omitted).  Accordingly, for the purposes of the second prong, the dispositive inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id.</u>  Courts have the discretion to decide which prong to address first, in light of the particular circumstances of each case.  <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

As discussed above, the undersigned finds that defendant Fernandez did not violate plaintiff's Eighth Amendment rights.  For this reason, the undersigned need not further address qualified immunity.

C.   <u>Conclusion</u>

For the reasons discussed above, the undersigned recommends that defendant Bryant be granted summary judgment on the grounds that plaintiff failed to exhaust administrative remedies as to his claims against defendant Bryant.

The undersigned recommends that defendant Fernandez be granted summary judgment as to both of plaintiff's Eighth Amendment claims on the grounds that there is no evidence that plaintiff suffered any physical harm as a result of his failure to receive meals.  The undersigned also recommends that defendant Fernandez be granted summary judgment as to plaintiff's claim alleging violation of his Eighth Amendment right to adequate medical care on the grounds that defendant Fernandez did not act with deliberate indifference to plaintiff's serious medical needs because there is no admissible evidence demonstrating that defendant Fernandez knew that plaintiff was diabetic.

V.     <u>Plaintiff's Summary Judgment Motion</u>

A.   <u>Plaintiff's Arguments and Evidence</u>

Plaintiff moves for summary judgment as to his claims alleging that defendants Fernandez

26

1  and  Bryant denied him meals in violation of the Eighth Amendment.  (ECF No. 82.)  The only

2  evidence attached to plaintiff's motion is plaintiff's declaration.  (Id.)

3       Plaintiff contends that the facts alleged in his declaration are undisputed.  (Id. at 5-8.)  The

4  undersigned summarizes plaintiff's declaration herein.

5       Plaintiff alleges that he was placed on a medical lay-in from December 2, 2016, through

6  December 12, 2016, after having carpal tunnel surgery.  (Id. at 2.)  Plaintiff alleges that the lay-in

7  order stated that plaintiff was to have meals in his cell.  (Id.)  Plaintiff alleges that he complained

8  to Officers Austin, Lee and Basile about not receiving meals.  (Id.)  Plaintiff alleges that on

9  December 8, 2016, and December 11, 2016, Officer Austin logged, "Kitchen staff refused to issue

10  tray for lay-in and 'explained that he could walk.'"  (Id.)  Plaintiff alleges that on December 10,

11  2016, Officer Basile logged, "No meals on wheels delivered to Ellesbury."  (Id. at 3.)

12       Plaintiff alleges that he has been a type two diabetic for over twenty years.  (Id.)  Plaintiff

13  alleges that while he does not take insulin, he requires food to prevent diabetic complications.

14  (Id.)

15       Plaintiff alleges that he was denied food on several occasions and told that he had to walk

16  to the chow hall.  (Id.)  Plaintiff alleges that defendant Fernandez told Officers Lee, Austin and

17  Basile that if plaintiff could walk, he had to come to chow hall and we are not going to deliver his

18  meals.  (Id.)

19       Plaintiff also observes that his second level grievance DVI 16-3721 was partially granted

20  at the second level of review with a finding that staff, i.e., defendant Fernandez violated staff

21  policy with respect to one or more of the issues appealed.  (Id. at 3-4.)  Plaintiff alleges that

22  defendants violated his Eighth Amendment rights.  (Id.)

23       B.  Defendants' Opposition

24       Relying on the evidence defendants submitted in support of their summary judgment

25  motion, defendants oppose plaintiff's summary judgment on the following grounds:  1) there is no

26  admissible evidence showing that defendant Fernandez was personally involved with plaintiff's

27  missing meals (ECF No. 87 at 7-9); 2) plaintiff's alleged deprivation of meals did not cause

28  plaintiff to suffer any harm (id. at 9-10); and 3) there is no evidence that defendants Fernandez

1    and Bryant were subjectively deliberately indifferent to a serious risk of harm to plaintiff (id. at

2    10-12).

3            Plaintiff did not file a reply to defendants' opposition.

4            C.   Discussion

5            For the reasons discussed above in the section addressing defendants' summary judgment

6    motion, the undersigned finds that the evidence suggests that defendant Fernandez was

7    responsible for the delivery of plaintiff's meals during plaintiff's medical lay-in.  However, for

8    purposes of plaintiff's motion for summary judgment that is a disputed fact.

9            Moreover, plaintiff's summary judgment motion contains no evidence demonstrating that

10   he suffered any harm, other than emotional, as a result of failing to receive meals.  For these

11   reasons, plaintiff's motion for summary judgment on the grounds that defendants violated his

12   Eighth Amendment rights by failing to provide him with meals on the dates and times alleged

13   should be denied.  Jett, 439 F.3d 1091, 1096; Foster, 554 F.3d at 813 n.2; 42 U.S.C. § 1997e(e).

14           For the reasons discussed above in the section addressing defendants' summary judgment

15   motion, the undersigned finds that whether defendant Fernandez knew that plaintiff did not

16   receive meals on the dates alleged is a disputed material fact.  For that reason, plaintiff is not

17   entitled to summary judgment as to his Eighth Amendment conditions-of-confinement claim

18   against defendant Fernandez.

19           For the reasons discussed above, the undersigned also finds that the record contains no

20   admissible evidence that defendant Fernandez knew that plaintiff had diabetes during his medical

21   lay-in.  For this reason, the undersigned finds that plaintiff is not entitled to summary judgment as

22   to his claim alleging that defendant Fernandez violated his Eighth Amendment right to adequate

23   medical care.

24           Because plaintiff has demonstrated no harm as a result of missing the one meal defendant

25   Bryant allegedly deprived him of, the undersigned need not reach the issue of whether defendant

26   Bryant acted with subjective deliberate indifference.

27           The undersigned observe that in his summary judgment motion, plaintiff alleges that he

28   has been denied access to witnesses.  (ECF No. 82-1 at 3.)  The witnesses to whom plaintiff refers

28

1   appear to be Officers Basile, Lee and Austin.  (ECF No. 82 at 4.)  The undersigned makes the

2   following observations regarding plaintiff's claim that he has been denied access to these

3   witnesses.

4        Plaintiff served untimely motions to compel seeking discovery responses from Officers

5   Basile, Lee and Austin.  (See ECF No. 66.)  The undersigned denied plaintiff's request to reopen

6   and extend the discovery deadline in order to obtain discovery from these non-parties based on

7   plaintiff's failure to show good cause for his request.  (Id.)  The undersigned did not improperly

8   deny plaintiff's access to these witnesses.

9        For the reasons discussed above, the undersigned recommends that plaintiff's summary

10   judgment motion be denied.

11        Accordingly, IT IS HEREBY RECOMMENDED that:

12     1.  Defendants' motion for summary judgment (ECF No. 79) be granted for the reasons

13        discussed above;

14     2.  Plaintiff's motion for partial summary judgment (ECF No. 82) be denied.

15        These findings and recommendations are submitted to the United States District Judge

16   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

17   after being served with these findings and recommendations, any party may file written

18   objections with the court and serve a copy on all parties.  Such a document should be captioned

19   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

20   objections shall be filed and served within fourteen days after service of the objections.  The

21   parties are advised that failure to file objections within the specified time may waive the right to

22   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23   Dated:  December 2, 2020

24

25   KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

26

27   Elles2744.sj

28

29